**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| KHABIR DANIEL,<br>Plaintiff,<br>v.<br>Warden MICHEAL THOMAS, *et al.*,<br>Defendants. | : | Case No. 5:26-cv-288-TES-AGH |

**ORDER AND RECOMMENDATION**

Plaintiff Khabir Daniel, an inmate in Central State Prison in Macon, Georgia, filed a complaint under 42 U.S.C. § 1983 (ECF No. 1), a motion for declaratory judgment (ECF No. 4), and a renewed motion to proceed *in forma pauperis* (IFP) (ECF No. 8). For the reasons stated below, the Court grants Plaintiff's renewed IFP motion. Plaintiff's complaint is therefore ripe for preliminary review. On preliminary review, Plaintiff shall be allowed to proceed on his deliberate indifference to a serious medical need claim against Defendant Dr. Omar. But it is recommended that his remaining claims be dismissed without prejudice and that his motion for declaratory judgment be denied.

**MOTION TO PROCEED IFP**

Plaintiff filed a renewed motion to proceed IFP (ECF No. 8). The Court granted Plaintiff's initial motion to proceed IFP (ECF No. 2) and ordered that he pay an initial partial filing fee of $62.90. Order 1-2, ECF No. 6 at 1-2. However, the Court noted that if Plaintiff's financial circumstances changed, he could file a

renewed IFP motion. *Id.* at 3. Plaintiff did so, and his submissions indicate he is unable to pay the initial partial filing fee. Accordingly, it is **ORDERED** that his renewed motion to proceed IFP (ECF No. 8) be **GRANTED**, his complaint be filed, and that he be allowed to proceed without paying an initial partial filing fee.

Nevertheless, Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court shall send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act (PLRA), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to that collection.

Plaintiff should also keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the

income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due by any means permitted by law. Plaintiff's complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINTS

### I. Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by IFP plaintiffs. 28 U.S.C. § 1915(e)(2). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss the case at any time if the court [finds] the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.").

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). A Court may dismiss claims based on "indisputably meritless legal" theories and "claims

whose factual contentions are clearly baseless." *Id.* A claim can be dismissed as malicious if it is knowingly duplicative or amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it fails to include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (citing 42 U.S.C. § 1983) ("Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his

claims, the complaint may be dismissed. *See Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of claims at preliminary screening since prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II. Factual Allegations

Plaintiff's claims arise out of his incarceration at Wilcox State Prison (WSP), in Abbeville, Georgia. Compl. 3, ECF No. 1. When he transferred to WSP in November 2019, Plaintiff was classified as a chronic care prisoner due to his hypertension. Compl. Mem. 10, ECF No. 1-2. During a medical screening, Plaintiff told Defendant Dr. Omar that one of his prescribed medications caused dizziness and asked that a bottom bunk profile be added to his medical chart. *Id.* Dr. Omar responded that a bottom bunk profile was not necessary and that Plaintiff needed to discuss his bed assignment with intake officers. *Id.* At a later appointment, Plaintiff told Dr. Omar it was hard to get a bottom bunk without a bottom bunk profile because "other prisoners in the housing units control who sleeps where and not the officers." *Id.* at 11. Plaintiff also explained to Dr. Omar that he had hurt his leg on several occasions "while navigating up and down from the top bunk and that [he] feared he would suffer a painful injury." *Id.* Dr. Omar told Plaintiff "that except for a life or death situation he could not assist Plaintiff with bed assignments." *Id.*

During Plaintiff's incarceration at WSP, former Warden Charles Mims allowed "Plaintiff and other older-aged prisoners, with obvious needs, to be provided a chair to aid them in getting up and down from the top bunks." *Id.* at 12. However,

Defendant Deputy Warden of Security Tabitha Bryant "subsequently confiscated many of the chairs permitted by Mims, including the chair of the Plaintiff." Compl. Mem. 12, ECF No. 1-2. Plaintiff told Bryant that he needed the chair for medical safety, but she denied Plaintiff's request. *Id.* Plaintiff also told Defendant Deputy Warden of Care and Treatment Jennifer Wilson that he needed a bottom bunk for "medical safety" or a chair until a bottom bunk became available. *Id.* However, his request was not granted. *Id.* Finally, during periodic chronic care appointments, Plaintiff told Defendants Drs. Bradford and Brooks that he needed a chair until a bottom bunk profile could be provided. *Id.* at 13. Plaintiff also communicated with "the medical department" about his serious medical needs. *Id.*

On or about October 4, 2025,[1] Plaintiff suffered "an irreparable injury to the fourth digit of his right hand that [wa]s severely dislocated as [he] attempt[ed] to brace himself from falling while coming down from a top bunk." Compl. Mem. 19, ECF No. 1-2. Plaintiff alleges that "Defendants (medical staff or a provider) [were] unavailable to examine or treat the Plaintiff's injury until two days following the incident" when Plaintiff was "given an x-ray and, subsequently, scheduled to see an off-site orthopedic specialist for further treatment" on October 21, 2025. *Id.* The specialist told Plaintiff "the delay to provide immediate treatment to the dislocated digit deprived Plaintiff of one treatment option, such as snapping the joint back into place, which might have been pursued had the injury been timely treated by a qualified provider[.]" *Id.* Further, the specialist stated that "it might have been

[1]Plaintiff does not specifically allege the date he injured his finger, but he states that the injury occurred seventeen days prior to visiting an orthopedic specialist. Compl. Mem. 19, ECF No. 1-2.

possible to prevent more invasive treatment or surgery which has caused permanent disfigurement or lifelong handicap of Plaintiff's dislocated digit." *Id.* The specialist also told Plaintiff it was unlikely that he would ever regain normal function of the "middle digit of his right hand[,]" resulting in Plaintiff not being able to make a fist, grasp objects, or write without pain. *Id.* at 19-20. Finally, Plaintiff will be unable to "continue work in his professional technical career in central heating and air services" due to this injury. *Id.* at 20. Plaintiff states that, following his fall, he was provided with a bottom bunk and bottom bunk profile. *Id.* at 15-16.

## III. Plaintiff's Claims

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by "refus[ing] to allow [him] to retain a chair to aid him with maneuvering up and down from a top bunk or provide a bottom bunk profile[.]" Compl. Mem. 14, ECF No. 1-2. Plaintiff also alleges Defendants were deliberately indifferent to a serious medical need by failing to provide adequate medical care after his finger injury. *Id.* at 19. Plaintiff further alleges Defendant Warden Thomas violated his Eighth Amendment rights by "fail[ing] to take remedial action to correct constitutional violations where the evidence show[s] a widespread policy of allowing inmates to control housing units and dictate where people sleep[.]" *Id.* at 17.

### A. Statute of Limitations

Initially, the Court must address whether Plaintiff's claims are barred by the statute of limitations. "A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat

affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). "A district court may only dismiss a prisoner's complaint as untimely prior to service if it 'appears beyond a doubt from the complaint itself that he can prove no set of facts which would avoid a statute of limitations bar.'" *Heard v. Publix Supermarkets, Inc.*, 808 F. App'x 904, 906 (11th Cir. 2020) (quoting *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (cleaned up)). "In section 1983 actions, federal courts refer typically to state law to determine the applicable statute of limitations and tolling rules." *Zamudio v. Haskins*, 775 F. App'x 614, 615-16 (11th Cir. 2019) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007)). The Georgia statute of limitations for personal injury is two years. *See* O.C.G.A. § 9-3-33; *see also Bell v. Metro. Atlanta Rapid Transit Auth.*, 521 F. App'x 862, 864 (11th Cir. 2013) (citations omitted) ("The forum state's statute of limitations for personal injury actions applies to § 1983 claims, which in Georgia is two years."). A statute of limitations begins to run when a cause of action accrues—in other words, when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (quotations and citation omitted).

Plaintiff's complaint provides few specific dates. He alleges he arrived at WSP in November 2019 and at least suggests he first saw Dr. Omar shortly afterward. Compl. Mem. 10, ECF No. 1-2. He also mentions one other appointment with Dr. Omar but does not indicate when that visit occurred. *Id.* at 11. The only other date noted by Plaintiff is October 21, 2025, when he was seen by an orthopedic specialist.

*Id.* at 19. He states he injured his finger climbing down from his bunk seventeen days prior to that, which would be October 4, 2025. *Id.* at 19. Plaintiff alleges that "[s]ince November 2019, the Defendants have been on notice about the Plaintiff's serious medical need but delayed or showed a deliberate indifference to provide a bottom bunk and a profile until six years later, on 10-21-25, after Plaintiff suffer[ed] an irreparable injury while coming down from a top bunk." Compl. 5, ECF No. 1. Thus, the Court cannot find from the complaint that Plaintiff "can prove no set of facts which would avoid a statute of limitations bar."[2] *Heard*, 808 F. App'x at 906.

B. Deliberate Indifference to a Serious Medical Need/Safety

*1. Legal Standards*

Plaintiff alleges Defendants were deliberately indifference to his serious medical need by refusing to provide him a bottom bunk profile or chair. Compl. Mem. 14-16, ECF No. 1-2. Further, as discussed below, Plaintiff's allegations also implicate conditions of confinement claims for deliberate indifference to safety.

To state an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l,*

---

[2]It is also possible Plaintiff's allegations fall under the continuing violation doctrine. This doctrine is implicated when "the allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided." *Dunn v. Comm'r Ga. Dep't of Corr.*, No. 22-13679, 2024 WL 2939086, at *4 (11th Cir. June 11, 2024). "When the alleged violation involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." *Id.* (citation omitted). The Court notes, however, that "[w]here a dismissal without prejudice has the effect of precluding the plaintiff from re-filing his claim due to the running of the statute of limitations, it is tantamount to a dismissal with prejudice." *Stephenson v. Doe*, 554 F. App'x 835, 837 (11th Cir. 2014) (citation omitted).

*Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted). The first element is objective and requires a plaintiff to set forth a "serious medical need," which is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307 (citation omitted). "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

To state a § 1983 claim for deliberate indifference to safety, a plaintiff must allege facts showing "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (2019). As with a serious medical need, whether a plaintiff faces a substantial risk of serious harm is an objective inquiry, requiring a plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Id.*

To establish the second element—deliberate indifference—under either claim, the plaintiff must allege facts showing that a defendant was subjectively aware that his conduct placed plaintiff at substantial risk of serious harm; that the defendant failed to respond to this known risk in an objectively reasonable manner; and that the defendant acted with subjective recklessness as used in criminal law. *Wade*, 106 F.4th at 1253, 1262.

The plaintiff can establish the third element—causation—by demonstrating that the defendant could have taken some action to avert the plaintiff's injury but, through deliberate indifference, failed to do so. *Rodriguez v, Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007).

*2. Bottom Bunk Profile*

Plaintiff alleges Dr. Omar was deliberately indifferent to his serious medical needs by failing to provide him with a bottom bunk profile. Compl. Mem. 11, ECF No. 1-2. He states that during his first visit, Plaintiff told Dr. Omar one of his prescribed medications caused dizziness and requested he be provided a bottom bunk profile. *Id.* at 10. Dr. Omar responded that a bottom bunk profile was unnecessary. *Id.* If Plaintiff's claim was premised solely on his disagreement with Dr. Omar over the necessity of a bottom bunk profile, then his complaint would be insufficient to state a claim. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (stating that "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" is insufficient to state a claim for deliberate indifference).

However, Plaintiff further alleges that during a subsequent visit, he explained to Dr. Omar that it was difficult to get a bottom bunk without a bottom bunk profile and that he had hurt his leg on several occasions "while navigating up and down from the top bunk." *Id.* at 11. He also told Dr. Omar that "[he] feared he would suffer a painful injury." *Id.* In response, Dr. Omar told Plaintiff "that except for a life or death situation he could not assist Plaintiff with bed assignments." *Id.* Plaintiff's

allegations regarding both visits with Dr. Omar suggest Dr. Omar knew Plaintiff was taking medications that made him dizzy, had difficulty getting into his top bunk, had injured himself doing so, and could not get a bottom bunk without a medical profile. These allegations suggest Dr. Omar knew Plaintiff had a serious medical need that could place him at a substantial risk of serious harm if he remained in the top bunk but failed to provide him with a profile or take any other action to address this need. *See Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) (suggesting an inmate could state a deliberate indifference claim if he "presented . . . evidence that [prison] officials knew that he needed a bottom bunk but intentionally kept him in a top bunk"). Furthermore, Dr. Omar's response suggests there was a non-medical reason for denying bottom bunk profile, which is sufficient to state a deliberate indifference claim. *See Bingham*, 654 F.3d at 1176 (citation omitted) ("[A] defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference."); *see also Wall v. Bushman*, 639 F. App'x 92, 95-96 (3d Cir. 2015) (reversing summary judgment where there was evidence supporting an inference that the doctor's decision to deny a lower bunk was for non-medical reasons, specifically a shortage of lower bunks). Thus, Plaintiff's deliberate indifference to a serious medical need claim against Dr. Omar may proceed for further factual development.

However, Plaintiff fails to allege sufficient facts to state a claim against Drs. Bradford and Brooks. His only assertion against them is that during chronic care appointments, he told them he needed a bottom bunk profile, which presumably they failed to provide. Compl. Mem. 13, ECF No. 1-2. Plaintiff notes these doctors

examined him during his visits, though, and he does not allege sufficient facts to show their refusal to issue a bottom bunk profile or a chair was for a non-medical reason or that they knew he had previously injured himself several times getting on and off of his bunk and would have difficulty being assigned to a bottom bunk if they did not give him a profile. Put differently, Plaintiff has failed to allege these Defendants were subjectively aware their own conduct posed a substantial risk of serious harm to Plaintiff. *Id.; see Wade*, 106 F.4th at 1262 (noting a plaintiff must show "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff"). Thus, the Court recommends that the claims against Drs. Bradford and Brooks be dismissed.

Plaintiff also fails to state a claim against Wellpath or Centurion Health, which he alleges were contractors at WSP. Compl. 4, ECF No. 1. Plaintiff contends WSP's "medical department" was insured by Wellpath and Centurion Health and that he had written the "medical department" about his serious medical needs. Compl. Mem. 13, ECF No. 1-2. This is the entirety of his allegations against these entities. Presumably, Plaintiff seeks to hold them liable based on their status as the doctors' employers. However, "[a] defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Harvey v. Harvey*, 949 F.2d 1127, 1129 (11th Cir. 1992) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)). To state a claim against a prison's medical services contractor, a prisoner must allege facts showing the contractor had a custom or policy that caused the constitutional violation. *Massey v. Montgomery Cnty. Det. Facility*, 646 F. App'x 777, 780 (11th Cir.

2016) (citing *Monell*, 436 U.S. at 694). Plaintiff does not allege Wellpath or Centurion Health maintained any policy or custom that resulted in the denial of Plaintiff's constitutional rights. Thus, his claims against them should be dismissed.

*3. Provision of Bottom Bunk or Chair*

Plaintiff alleges Defendants Bryant and Wilson were deliberately indifferent by refusing to assign him a bottom bunk or to provide a chair for him to get into a top bunk. Compl. Mem. 12, ECF No. 1-2. In addition to a deliberate indifference to a serious medical need theory, some courts—including this one—have analyzed such allegations as asserting a conditions of confinement claim and considered whether the plaintiff adequately alleged a defendant was deliberately indifferent to his *safety*. *See Redding v. Georgia*, 557 F. App'x 840, 843-44 (11th Cir. 2014) (affirming dismissal of claim alleging injury from the denial of a bottom bunk, a wheelchair, and medication under a conditions of confinement analysis); *see also Dukes v. Walton Cnty. Det. Cntr.*, No. 3:25-cv-49-TES-CHW, 2025 WL 1912375, at *4 (M.D. Ga. July 11, 2025) (allowing claim to proceed past preliminary review on both deliberate indifference to a serious medical need and conditions of confinement theories where defendants failed to honor bottom floor profile despite awareness that the profile was medically necessary), *recommendation adopted by* 2025 WL 5309206 (M.D. Ga. July 29, 2025); *see also Little v. Ebbert*, No. 1:17-cv-0191, 2018 WL 6504201, at *4 (M.D. Pa. Dec. 11, 2018) (construing claim that defendants were deliberately indifferent by not providing him a ladder to his top bunk as a conditions of confinement claim).

Here, Plaintiff alleges he told Bryant and Wilson that he needed a bottom bunk

or chair for safety, and they refused. Compl. Mem. 12, ECF No. 1-2. He further alleges Defendants knew he took medication that could cause dizziness. *Id.* at 16. He also states the former warden had allowed Plaintiff and other "older-aged prisoners [] with obvious needs" to use a chair to climb into the top bunk. *Id.* at 12.

Under either a deliberate indifference to a serious medical need or conditions of confinement theory, Plaintiff fails to state a claim. Even in cases where inmates had bottom bunk profiles, courts have generally deemed a failure to provide a bottom bunk to be no more than mere negligence. *See Smith v. Wood*, No. 20-12918, 2021 WL 4452526, at *4 (11th Cir. Sept. 29, 2021) ("We have previously held . . . that an inmate who was transferred from a bottom bunk to a top bunk did not sufficiently plead deliberate indifference, even though he had a medical profile requiring him to sleep on the bottom bunk." (citing *Burley*, 257 F. App'x at 208-210)); *see also Redding*, 557 F. App'x at 844 (concluding that while "[i]t may have been negligent to assign [the plaintiff] to a bunk contrary to his profile," the plaintiff complaint failed to allege facts sufficient to show subjective knowledge of a risk of serious harm); *see also Carlton v. Core Civic*, No. CV623-022, 2023 WL 5166375, at *4 (S.D. Ga. May 12, 2023) (finding allegations that the defendant failed to accommodate a bottom-bunk profile did not state a claim), *recommendation adopted by* 2023 WL 4557736 (S.D. Ga. July 17, 2023); *see also Timmons v. Martin*, No. 6:17-cv-116, 2021 WL 1603614, at *6 (S.D. Ga. Mar. 5, 2021) ("[C]ase law indicates a failure to honor a bunk profile does not amount to deliberate indifference." (collecting cases)), *recommendation adopted by* 2021 WL 1146001 (S.D. Ga. Mar. 25, 2021).

Here, as Plaintiff acknowledges, he did not have a bottom bunk profile that could suggest to *non-medical* prison officials that he required a bottom bunk for health or safety reasons. Other than taking medication that "may cause dizziness," Compl. Mem. 16, ECF No. 1-2, Plaintiff does not allege Defendants were aware of a physical condition that placed him at substantial risk of serious harm. Importantly, Plaintiff does not allege Defendants Bryant or Wilson knew he had previously hurt himself trying to navigate his top bunk. Plaintiff therefore fails to allege facts sufficient to show his "situation was so obviously dire" Defendants Bryant or Wilson should have known that prison medical staff "had grossly misjudged" Plaintiff's need for a bottom bunk profile and should have taken it upon themselves to assign him to a bottom bunk. *Kuhne v. Fla. Dep't Corr.*, 618 F. App'x 498, 507 (11th Cir. 2015) (holding that "when a lay person is accused of deliberate indifference, the plaintiff must 'present[] evidence that her situation was so obviously dire that two lay [officers] must have known that a medical professional had grossly misjudged [the plaintiff's] condition'") (alterations in original) (quoting *Townsend v. Jefferson Cnty.,* 601 F.3d 1152, 1159 (11th Cir.2010)).

Further, while Plaintiff alleges that the previous warden allowed "older-aged prisoners[] with obvious needs to use chairs," he does not state what his age was at the time of the fall or allege how his age or hypertension would qualify him as someone with an "obvious need" of assistance to access a top bunk. Compl. Mem. 12. He also does not contend Defendants were aware of other inmates getting injured climbing onto or off of a top bunk prior to Plaintiff's injury or that there was

something about the bunks at WSP that caused them to be particularly dangerous.

Hence, while Defendants' refusal to allow Plaintiff a bottom bunk or a chair may have been negligent, Plaintiff's allegations are insufficient to state a claim of deliberate indifference and should be dismissed. *See Smith*, 2021 WL 4452526, at *1, 4 (affirming dismissal of complaint on preliminary screening where the defendant moved plaintiff onto an "upper middle bunk bed despite his medical restriction sheet which stated he could not climb or use ladders" and the plaintiff was injured when he fell from the bunk ladder, concluding that while the defendant's "conduct may have been negligent," it did not "demonstrate culpability that meets the more stringent standard required for an Eighth Amendment claim"); *see also Griner v. Dixon*, No. 1:24-cv-20129-KMM, 2024 WL 1164574, at *1, 4 (S.D. Fla. Feb. 15, 2024) (citation omitted) (dismissing case on preliminary review where inmate with a history of seizures was assigned to a top bunk despite the defendant's knowledge of plaintiff's condition, stating that plaintiff "at best alleges gross negligence, which falls short of satisfying the subjective component"); *see also Wayne v. Warren*, No. 1:20-CV-4777-ELR-JKL, 2020 WL 13952780, at *2-3 (N.D. Ga. Dec. 3, 2020) (finding plaintiff stated a claim where he fell from a top bunk and broke his hip, noting that the defendant was aware of the substantial risk posed by lack of a ladder "because there had been several previous incidents of inmates falling from the top bunk and suffering severe permanent injuries, including at least one death"), *recommendation adopted in relevant part by* 2021 WL 12218839 (N.D. Ga. Jan. 22, 2021).

4. *October 2025 Fall*

In his conclusion, Plaintiff alleges "Defendants (medical staff or a provider) [were] unavailable to examine or treat Plaintiff's injury until two days following the incident[.]" Compl. Mem. 19, ECF No. 1-2. He then alleges that it was not until seventeen days after the injury that he saw an orthopedic specialist, who told Plaintiff that, due to the delay, it was unlikely he would regain normal function in the middle digit of his right hand. *Id.* at 19-20. It is not clear whether Plaintiff intends to assert the alleged lack of prompt treatment as a separate claim for deliberate indifference to a serious medical need, but to the extent he does, he fails to state a claim. He does not allege facts showing what any individual Defendant knew about his injury or any actions that they took or failed to take in response. Thus, he fails to allege facts showing deliberate indifference regarding treatment of his injured hand, and the Court recommends that this claim be dismissed.

5. *Inmate Control of Bed Assignments*

Plaintiff alleges that Defendant Warden Thomas failed to:

> take remedial action to correct constitutional violations where the evidence show[s] a widespread policy of allowing inmates to control the housing units and dictate where people sleep and [did] not enforce prison classification, housing[,] and bed assignments to ensure the prisoners in his custody [were] situated based on their individual need.

*Id.* at 17. Plaintiff cites a Department of Justice (DOJ) report on Georgia prisons as "sufficient to show the Defendants knew or should have known about unconstitutional conditions under their watch such as, inter alia, the failure of inmate housing and classification policies or practices in its prisons." *Id.* at 18. If the Court

understands Plaintiff's allegations correctly, he contends that Defendants were deliberately indifferent to his safety by allowing inmates to control bed assignments in the dorms, resulting in his injury when he fell climbing down from his bunk.[3]

Generally, allegations that inmates control aspects of a prison environment are in the context of claims alleging failure to protect inmates from violence at the hands of other inmates. *See Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1068 (M.D. Ala. 2023) ("The factual allegations paint a dark picture of a lawless state at Ventress where armed, unsupervised, and violent inmates can go wherever they want, whenever they want, and do whatever they want."). Assuming these cases are relevant to bedding assignments, Plaintiff still fails to state a claim. He does not allege that the prison officials assigned him a bottom bunk and inmates *overrode* that determination. In fact, his contention is that prison officials were deliberately indifferent for *not* assigning him a bottom bunk, which would be irrelevant if inmates actually controlled bunk assignments. In other words, Plaintiff has failed to allege facts sufficient to show Defendants' custom or policy of allowing inmate control over the bunk assignments caused Plaintiff's injuries. *See Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (noting a plaintiff "must demonstrate causation" to show deliberate indifference). The Court thus recommends that Plaintiff's claims against Warden Thomas be dismissed and—to the extent they are premised on inmate control over bunk assignments—that the claims against the other Defendants also be dismissed.

[3]While Plaintiff initially identifies only Warden Thomas on this theory, the Court assumes that by his collective reference to "Defendants" he means to include the remaining Defendants, though he makes no allegations showing the medical Defendants would have any control over housing and classification.

C. Declaratory and Injunctive Relief

In his request for relief, Plaintiff asks the court to declare Defendants violated his Eighth Amendment rights by delaying adequate care and exhibiting deliberate indifference, causing him to suffer an irreparable injury. Compl. Mem. 22, ECF No. 1-2. Plaintiff also filed a motion for declaratory judgment seeking the same relief (ECF No. 4). Plaintiff's complaint also includes a request for injunctive relief "if Defendants fail to correct the application of invalid prison regulation[s] or medical practices as it relates to delay and deliberate indifference to treat or accommodate the disability of the Plaintiff's serious medical needs." Compl. Mem. 22.

Plaintiff's motion for a declaratory judgment is improper. "[A] party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment." *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010). The Court thus recommends that Plaintiff's motion for declaratory judgment (ECF No. 4) be **DENIED**.

Plaintiff's claim for declaratory relief in his complaint should also be dismissed. Plaintiff is no longer at WSP, and his allegations relate to past events. Further, Plaintiff alleges he was given a lower bunk and lower bunk profile after his injury. Compl. Mem. 15-16. "[A] declaration that Defendants' past conduct violated [Plaintiff's] constitutional rights would be . . . a gratuitous comment without any force or effect." *Merritt v. Godfrey*, No. 3:13cv607/LAC/EMT, 2015 WL 5439306, AT *10 (N.D. Fla. Aug. 10, 2015) (quotations and citation omitted). "Plaintiff's claim for declaratory judgment relief is subject to dismissal for failing to satisfy the 'actual

controversy' prerequisite of 28 U.S.C. § 2201." *Id.* (collecting cases).

Similarly, Plaintiff's claim for injunctive relief should also be dismissed. "The general rule is that a prisoner's transfer . . . moots his individual claim for . . . injunctive relief." *McKinnon v. Talladega Cnty.*, *Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984). The general rule applies in Plaintiff's case because he is no longer under Defendants' care or custody, and he was given a lower bunk profile. Moreover, Plaintiff's request for injunctive relief is, in effect, simply a demand for a command that Defendants "obey the law," which is not permitted. *See Elend v. Bassham*, 471 F.3d 1199, 1209 (11th Cir. 2006) ("It is well-established in this circuit that an injunction demanding that a party do nothing more specific than obey the law is impermissible." (quotations and citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff's renewed IFP motion (ECF No. 8) is **GRANTED**, and his Eighth Amendment deliberate indifference to a serious medical need claim against Defendant Dr. Omar shall proceed. It is **RECOMMENDED**, however, that his remaining claims be dismissed without prejudice. It is also recommended that his motion for declaratory judgment (ECF No. 4) be **DENIED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with United States District Judge to whom this case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file

written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Objections to the Recommendation are limited in length to twenty (20) pages. A party seeking permission to exceed these limitations shall do so by filing a written motion no later than five (5) days in advance of the deadline for filing objections and by specifying the number of pages requested. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. See 11th Cir. R. 3-1.

**ORDER FOR SERVICE**

Having found that Plaintiff has made colorable constitutional violation claim against Defendant Dr. Omar, it is accordingly **ORDERED** that service be made on him and that he file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the PLRA. Defendant is reminded of his duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

**DUTY TO ADVISE OF ADDRESS CHANGE**

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly do so may result in the dismissal of a party's pleadings.

**DUTY TO PROSECUTE ACTION**

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil

Procedure for failure to prosecute. Defendant is similarly advised that he is expected to diligently defend all allegations made against him and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

**FILING AND SERVICE OF MOTIONS,
PLEADINGS, AND CORRESPONDENCE**

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

**DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the

Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

**IT IS ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). A trial may be scheduled upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the

Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party need respond to any such requests exceeding these limits.

**IT IS FURTHER ORDERED** that Defendant comply with the attached "Required Disclosure of the Existence of Video or Photographic Evidence When Plaintiff Files Suit Against One or More Georgia Department of Corrections Employees Relating to Events That Occurred During Plaintiff's Incarceration within the Georgia Department of Corrections."

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred-twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED,** this 9th day of November, 2026.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE

**REQUIRED DISCLOSURE OF THE EXISTENCE OF VIDEO OR PHOTOGRAPHIC EVIDENCE WHEN PLAINTIFF FILES SUIT AGAINST ONE OR MORE GEORGIA DEPARTMENT OF CORRECTIONS EMPLOYEES RELATING TO EVENTS THAT OCCURRED DURING PLAINTIFF'S INCARCERATION WITHIN THE GEORGIA DEPARTMENT OF CORRECTIONS**

Counsel for the Defendant shall confer with the Defendant and with appropriate Georgia Department of Corrections ("GDC") staff, and no later than 30 days from the date of entry of this Required Disclosure file the following disclosures:

(1) State whether, at the time of the incident alleged in the complaint, the facility had stationary or mounted cameras in the area where that incident allegedly occurred.

(2) If so, state whether those cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and the identity of the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(3) State whether body-worn or handheld cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and identify the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(4) If Plaintiff complains of a use of force (either anticipated, spontaneous, or unanticipated) as that term is defined in the GDC Standard Operating Procedure, Use of Video Recording Equipment, Policy No. 204.11, and the GDC Standard Operating Procedure, Use of Force and Restraint for Offender Control, Policy No. 209.04, identify the custodian of any recordings of the events alleged. If there are no available recordings, explain in detail why the events were not recorded or, if recorded but no longer available, why the recordings were not preserved.

(5) Identify all GDC employees contacted to gather the information required by this disclosure.

Counsel is directed to preserve all video recordings and any photographs that may have captured the events giving rise to the complaint. Failure to do so may result in the imposition of sanctions.